UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

GARY WILLIAMS,

Defendant.

Case No. CR03-493L

SENTENCING ORDER

## I. INTRODUCTION

This matter comes before the Court for sentencing on Mr. Williams's plea of guilty to one count of bank fraud and one count of conspiracy. On April 19, 2005, this Court signed a judgment which sentenced Mr. Williams to a period of imprisonment of 126 months followed by 5 years supervised release, restitution in the amount of $856,878.28, and a special assessment payment of $200.00. This sentencing order clarifies the Court's findings made at the hearing.

## II. DISCUSSION

### A. Factors Considered In Determining Sentence.

Although U.S. v. Booker, __ U.S. __, 125 S.Ct. 738 (2005) held that the Federal Sentencing Guidelines are no longer mandatory, this Court must still determine the applicable sentencing range as recommended under the Guidelines. See id. at 764-65. The recommended range, however, is only one "factor that the sentencing court is to consider along with the factors

contained in [18 U.S.C.] § 3553(a) in reaching the sentencing result." U.S. v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005); accord U.S. v. Rogers, 400 F.3d 640, 641 (8th Cir. 2005).

With these factors in mind, the Court will first determine Mr. Williams's sentencing range under the Guidelines and then address the other factors that have informed the sentence.

**B. Sentencing Range Under the Guidelines.**

The probation department provided a Presentence Report ("PSR") in which it determined that Mr. Williams had an offense level of 30 and a criminal history category of V. Mr. Williams has objected to the PSR's offense level on two grounds. First, he argues that he should not have received a four level increase for being an organizer or leader of a criminal activity of five or more participants under USSG § 3B1.1(a). Second, he contests the 16 level increase based on the conclusion that the actual loss attributed to the conspiracy exceeded $1 million. See USSG § 2B1.1(b)(1)(I). Mr. Williams has objected to the Category V criminal history classification on the grounds that his conviction for theft in the Second Degree in Snohomish County Superior Court on October 5, 2001, criminal case # 01-1-00864-6 (the "Snohomish County conviction"), should have been considered "relevant conduct" that did not count towards his criminal history classification.

At the April 19, 2005 sentencing hearing, the government presented witnesses in support of the objected-to portions of the PSR. At all times, the government retained the burden of proof and was required to meet that burden based upon a preponderance of the evidence standard. See U.S. v. Mares, 402 F.3d 511, 519 (5th Cir. 2005); McReynolds v. U.S., 397 F.3d 479, 481 (7th Cir. 2005). As Judge Easterbrook has properly concluded, "the remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application." McReynolds, 397 F.3d at 481.

The Court also holds that neither the Booker decision nor the decision in Crawford v. Washington, 541 U.S. 36 (2004), alters the Court's ability to receive hearsay testimony into

evidence. Just as in pre-Booker sentencings, however, the parties are required to establish a reliable basis for facts contained in any hearsay testimony.

**1. Offense Level.**

Based on the testimony of Detective Heidi Traverso, co-defendants John Hart and Kenya Hall, and FBI agent Susan Dayton, the Court concludes that the government has met its burden. Even under a more stringent, clear and convincing evidence standard, the testimony at sentencing proved that Mr. Williams was an organizer and leader of an extensive criminal conspiracy that involved more than five participants and that the actual loss attributed to the conspiracy well-exceeded $1 million. Particularly damaging to Mr. Williams was the testimony of Kenya Hall. Ms. Hall convincingly testified that Mr. Williams was heavily involved in planning the fraudulent schemes and influencing the other members of the conspiracy. In addition, FBI agent Susan Dayton provided convincing testimony that the fraudulent schemes conducted by Mr. Williams and his co-conspirators resulted in an actual loss of more than $1 million.

Mr. Williams agrees with the findings of the probation department that the conspiracy involved more than 10 victims (see USSG § 2B1.1(b)(2)(A)(i)), that he was in possession of more than 5 unlawfully produced identifications (see USSG § 2B1.1(b)(9)(C)(ii)), and that he willfully obstructed the administration of justice during the course of the investigation (see USSG § 3C1.1)). In addition, Mr. Williams agrees with the probation department that he is entitled to a two level reduction in his offense level for acceptance of responsibility (see USSG § 3B1.1(a)).

The Court finds that Mr. Williams is not eligible, as he claims, for a one level reduction for acceptance of responsibility under USSG § 3E1.1(b). This reduction only applies when a defendant has admitted to all of the relevant conduct surrounding the offense. Since this Court has found that Mr. Williams did play a leadership role, a fact that Mr. Williams has disputed, he has not admitted to all of the relevant conduct surrounding the offense and cannot claim a §

3E1.1(b) reduction.

Based on the facts to which the parties agree and the evidence presented by the government at the April 19, 2005 hearing, the probation department correctly calculated Mr. Williams's offense level as follows:

| | |
|---|---|
| Base offense level: | 6 |
| Loss Amount greater than $1 million | +16 |
| More than 10 victims | +2 |
| Possession of 5 or more unlawful identifications | +2 |
| Aggravated Role Adjustment | +4 |
| Obstruction of Justice | +2 |
| Acceptance of Responsibility | -2 |
| **Total Offense Level** | **30** |

**2. Criminal History Category.**

The probation department concluded that Mr. Williams had a subtotal of 8 criminal history points. Two additional points were added to this subtotal because he was under the jurisdiction of Snohomish County Superior Court during the conspiracy. See USSG § 4A1.1(d). One more point was added because the conspiracy occurred less than two years after Mr. Williams was released on the Snohomish County conviction. See USSG § 4A1.1(e). In total, Mr. Williams was assessed 11 criminal history points, placing him in Criminal History Category V.

Mr. Williams contests his criminal history points and the Category V classification. He argues that the Snohomish County conviction is relevant conduct and, therefore, should not be counted. See USSG §§ 1B1.3 & 4A1.2 comment. (n.1). Similarly, Mr. Williams argues that this conviction should not be used as the basis for the 3 point increase under §§ 4A1.1(d) & (e).

Although the Court believes that the probation department was correct in its calculation,

the terms of the plea agreement (Dkt. # 320) support Mr. Williams's argument. In Section 11 of the plea agreement, the parties agree that Mr. Williams will receive credit for ten month's time served for the Snohomish County conviction and for two other convictions (cause number 01HF0634 out of Orange County Superior Court and cause number 01-1-055512-3 out of King County Superior Court). The King County and Orange County convictions were not counted in determining the criminal history because they were held to be conduct that is part of the instant offense under § 4A1.2(a). See PSR at ¶¶ 106 & 110. Counsel for Mr. Williams argues that the plea agreement suggests that all three convictions are for conduct that is part of the instant offense. Although the terms of the plea agreement are ambiguous, the Court must "construe ambiguous language in favor of the defendant." U.S. v. Joyce, 357 F.3d 921, 923 (9th Cir.) (citing U.S. v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002)), cert denied, 160 L. Ed. 2d 197 (2004). Based on the terms of the plea agreement, the Snohomish County conviction does not count as points towards Mr. Williams's criminal history. Without the points relating to the Snohomish County conviction, Mr. Williams has 6 criminal history points which places him in Criminal History Category III.

**3. Conclusions Regarding the Guidelines Range.**

In sum, the government proved by a preponderance of the evidence that Mr. Williams played a leadership role in the offense and that the loss resulting from the conspiracy exceeded $1 million. As noted above, even if this Court had applied a more stringent, clear and convincing evidence standard, the government would have met its burden. What is more, even though the probation department correctly included the Snohomish County conviction when determining Mr. Williams's criminal history category, the plea agreement requires that the conviction be excluded. Under the Guidelines, Mr. Williams has an offense level of 30 and a criminal history category of III, which translated to a range of imprisonment of 121 to 151 months.

**C. Consideration of Other Factors.**

The defense has raised a number of factors that tend to mitigate Mr. Williams's culpability while the government has identified factors that aggravate his culpability. It is difficult to minimize the seriousness of the crimes committed by Mr. Williams. Although his criminal conduct did not involve violence (a fact worthy of consideration), he has left a number of victims in his wake. This Court notes that the crime of identity theft causes a tremendous amount of harm that continues long after the fraud itself has passed. Victims suffer immediate financial problems and long term credit problems that can have a significant toll on professional and personal lives. The costs incurred in correcting these problems cannot just be measured in dollars, but also must be measured by the emotional strain and time the victims must take to address the frauds.

In addition, the Court has had an opportunity to sentence a number of Mr. Williams's co-conspirators and is confident that at least some of them would not have been involved in this scheme if it were not for Mr. Williams's influence. Although these co-defendants cannot be considered victims in the traditional sense, his negative impact on the lives of these individuals must be acknowledged.

There is no question, however, that Mr. Williams is an extremely intelligent individual whose talents have been, to the say the least, misapplied. The Court is not without hope that Mr. Williams may yet take the opportunity to channel his intellect in a more productive manner.

Having calculated the recommended sentencing guideline, heard the arguments of the parties, and considered the factors set forth in 18 U.S.C. § 3553(a), including those factors described above, the Court finds that it is appropriate to impose a sentence of 136 months imprisonment. Such a sentence falls within the mid-point of the recommended Guideline range and accurately reflects the seriousness of the crime while, at the same time, recognizing Mr. Williams's intelligence and potential to reform. What is more, the Court believes that a 136 month sentence is fair when placed in the context of the sentences received by Mr. Williams's

co-conspirators.

Under the plea agreement, Mr. Williams receives credit for ten months time served, which reduces his sentence to 126 months.

DATED this 9th day of May, 2005.

Robert S. Lasnik
United States District Judge